FREDERICK W. STOCK, and others,

*vs.*

JOSIAH C. TOWLE, and another.

Androscoggin.    Opinion April 4, 1903.

*Sales. Modification of Offer. Delivery. Transit Car.*

The phrase transit car in a contract for the sale and delivery of merchandise by railroad has a well defined and uniform meaning. In this case it means a car already loaded with flour and on its way from the mill to the vendee.

The introduction of additional terms in an answer to an offer of sale is a material modification of the terms of offer and operates as a rejection and constitutes a new proposal which must be assented to before a contract is completed.

When the plaintiffs were informed during the preliminary negotiations for the purchase of flour that the defendants wanted it for immediate use, and must have understood that the term "transit car" was inserted in the order, by the defendants, for the purpose of insuring the delivery of the flour at the earliest practicable hour, *held;* that the stipulation for a transit car is a substantial and important element in the proposal. Time is of the essence of the contract and a condition precedent to the plaintiffs' right and the defendants' obligation.

A tender of a carload of flour not in transit at the date of the contract, but shipped three days later, is not a sufficient compliance with the condition of sale by transit car, and the defendants' refusal to accept the flour, when tendered, under those conditions, is not a breach of their contract.

On report.    Judgment for defendants.

Action to recover forty dollars, claimed to be due the plaintiffs, for loss of twenty cents per barrel on two hundred barrels of flour, alleged to have been sold to the defendants and the acceptance of which was refused by them. Plea, general issue.

The facts appear in the opinion.

*Geo. C. Wing,* for plaintiffs.

*W. H. Newell and W. B. Skelton,* for defendants.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, SAVAGE, SPEAR, JJ.

WHITEHOUSE, J. This is an action to recover damages sustained by the plaintiffs by reason of the refusal of the defendants to accept a car load of flour, alleged to have been bargained and sold to them by the plaintiffs. The plaintiffs were proprietors of flouring mills at Hillsboro, Michigan, with a branch office for the wholesale of flour at Lewiston, Maine, and the defendants were wholesale dealers in flour and grain at Bangor, Maine. The case comes to this court on report.

At the time of the alleged contract, the price of old wheat flour was well advanced, but new wheat flour was coming into the market and the price was likely to fall. The defendants informed the plaintiffs by telephone that they desired to purchase a car load of old wheat flour for immediate use, but the conversation by telephone failed to result in the mutual assent of the parties to the same proposition. In the afternoon of the same day, however, the plaintiffs, from their office in Lewiston, sent the following telegram to the defendants at Bangor:

"July 29, 1902.

Dated, Lewiston, Me.

    To J. C. Towle & Co.,

        Bangor, Me.

Advise quick book one car four ten delivered.

                F. W. STOCK, JR.   4-25"

This telegram was received by the defendants the same day and at six minutes past five o'clock, the same afternoon, the defendants telegraphed to the plaintiffs the following answer:

"July, 29, 1902.

    Bangor, Me.

To F. W. Stock & Sons.

    Accept car Stocks best patent at offer transit car.

              J. C. TOWLE & Co.   5-6 P. M."

The introduction of the term "transit car" in this answer being a material modification of the terms of the offer, operated in law as a

rejection of it and constituted a new proposal, which, however, was equally ineffectual to complete the contract until it was assented to by the plaintiffs. But the next day, July 30th, the plaintiffs sent the following letter to the defendants:

"Lewiston, Me., July 30, 1902.

J. C. Towle & Co.,

Bangor, Me.

Gentlemen:

Received your wire last night and have booked you one car flour $4.10 delivered Bangor. Will give you the first car to arrive. Thanking you for your favor, I remain,

Yours truly,

F. W. STOCK & SONS,

Per F. W. S. Jr."

This constituted an acceptance of the defendants' proposal. It warranted the conclusion that the plaintiffs had "booked" the defendants a "transit car" as specified in the proposal. It is in evidence and not in controversy that the phrase "transit car" had a well defined and uniform meaning in the trade, well understood by both parties. In this instance, it meant a car already loaded, and on its way from Hillsboro to Maine.

No further communication took place between the parties until August 11th when the following letter was sent from the defendants to the plaintiffs, namely:

"Bangor, Me., August 11, 1902.

F. W. Stock & Sons,

Dear Sirs:—

July 30th we bought of you one car of your best patent with the understanding that the car was in transit and that we were to have the first car that arrived, as you have not seen fit to give us the first arrival, please cancel the order.

Yours truly,

J. C. TOWLE & Co."

To this the plaintiffs made the following reply:

"Lewiston, Me., August 11, 1902.

J. C. Towle & Co., Bangor, Me.

 Gentlemen:—

Replying to your favor will say that I have plenty of cars on the way but not one arrival that has not been sold. The very first car arriving for my account I expect to forward to you.

Yours truly,

F. W. STOCK & SONS,

Per F. W. S. Jr."

To this letter the defendants replied as follows:

"Bangor, Me., August 13, 1902.

F. W. Stock & Sons,

 Dear Sirs:—

Yours of the 11th received. Please cancel the order as we shall not take the car flour. Your letter of July 30th says that you will give us the first car that arrives and as you have not done so, we shall consequently refuse the car.

Yours truly,

J. C. TOWLE & Co."

It appears from the evidence that on July 29th and 30th the plaintiffs did not have a car load of best patent flour in transit from their mills at Hillsboro to Portland and that a car load of this quality of flour did not leave the plaintiffs' mills at Hillsboro, Michigan, until August 2nd, and did not arrive in Portland until after August, 12th. It is in evidence that eight or ten days are required for a car to come from Hillsboro to Portland. It is not in controversy that this car load was duly tendered to the defendants and that an acceptance of it was refused by them.

The plaintiffs accordingly contend that they performed their part of the contract and are now entitled to damages for a breach of it on the part of the defendants. On the other hand, the defendants insist that the plaintiffs failed to perform the contract according to its terms, for the reason that their tender of the flour was more than three days later than it would have been if the car had been in transit July 30th, according to the understanding of the defendants and the requirement of the contract.

It is the opinion of the court that the contention of the defendants must be sustained. The plaintiffs were informed during the preliminary negotiations for the flour that the defendants wanted it for immediate use, and must have understood that the term "transit car" was inserted in the order, by the defendants, for the purpose of insuring the delivery of the flour at Bangor at the earliest practicable hour. The stipulation for a "transit car" was therefore a substantial and important element in the proposal. Time was of the essence of the contract and a condition precedent to the plaintiffs' right and the defendants' obligation.

But it is contended that the defendants' letters of August 11th, and August 13, show that they refused to accept the flour because the plaintiffs did not see fit to give them the first car that arrived from the west, and that they must be deemed from the language of their letters to have waived their right to insist on a "transit car" as a condition precedent in the contract. In the letter of August 11, they say: "we bought with the understanding that the car was in transit and that we were to have the first car that arrived, as you have not seen fit to give us the first arrival, please cancel the order." In the letter of August 13th, they say: "Your letter of July 30, says that you will give us the first car that arrives and as you have not done so, we shall consequently refuse the car."

These letters should obviously be read and considered in connection with all the other correspondence and interpreted in the light of the facts known to the defendants, at that time, and of all the attending circumstances. They ordered and expected a transit car loaded with flour, knowing that in the ordinary course of transportation a maximum limit of ten days only would be required to bring it to Maine. They had the plaintiffs' assurance that the first car load to arrive would be delivered to them. They knew that thirteen days had elapsed, and their reasonable conclusion was that if a transit car had arrived, the flour had been delivered to some other customer. Construed in the light of these facts and circumstances, the two letters read together may fairly be understood to signify that the defendants cancelled the order because they believed that the plaintiffs had not given them the first transit car that arrived. The letters

do not support the plaintiffs' contention in regard to a waiver.

To entitle the plaintiffs to recover, it was incumbent upon them to show a full performance on their part of all the terms of the contract. A tender of a car load of flour not in transit at the date of the contract, but shipped three days later, was not a sufficient compliance with the condition of the sale, and the defendants' refusal to accept the flour when tendered, under those conditions, was not a breach of their contract.

*Judgment for the defendants.*